*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

SPERO ELECTRIC CORPORATION,
                            *Plaintiff-Appellant,*

          *v.*                                                    No. 04-4142

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO, LOCAL UNION NO. 1377,
                            *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-02244—Solomon Oliver, Jr., District Judge.

Argued: October 24, 2005

Decided and Filed: February 28, 2006

Before: RYAN, GILMAN, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Alan G. Ross, ROSS, BRITTAIN & SCHONBERG CO., Cleveland, Ohio, for
Appellant. Ryan J. Lemmerbrock, FAULKNER, MUSKOVITZ & PHILLIPS, Cleveland, Ohio, for
Appellee. **ON BRIEF:** Alan G. Ross, ROSS, BRITTAIN & SCHONBERG CO., Cleveland, Ohio,
for Appellant. Ryan J. Lemmerbrock, FAULKNER, MUSKOVITZ & PHILLIPS, Cleveland, Ohio,
for Appellee.

        GILMAN, J., delivered the opinion of the court, in which COOK, J., joined. RYAN, J.
(p. 7), delivered a separate concurring opinion.

_____

**OPINION**

_____

        RONALD LEE GILMAN, Circuit Judge. This case involves the enforceability of an
arbitrator's award in a labor dispute. The specific issue is whether the basis for the award in favor
of the discharged employee conflicts with the express terms of the collective bargaining agreement
(CBA) between Spero Electric Corporation and the International Brotherhood of Electrical Workers,
AFL-CIO, Local Union No. 1377 (IBEW). Spero particularly challenges the arbitrator's
determination that the company had given up its right under the CBA to unilaterally change its work
rule regarding the no-smoking policy at the plant. For the reasons set forth below, we **REVERSE**

1

the judgment of the district court that enforced the award and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.      Factual and procedural background

Spero and the IBEW entered into the CBA in late 2000. It provides for arbitration in the event that the "grievances arising under the terms of this Agreement . . . are not satisfactorily disposed of through the established channels of the grievance procedure."

After employee John Salters was fired for a first-offense violation of Spero's no-smoking policy, he filed a grievance. The grievance was submitted to an arbitrator with this stipulated issue: "Was the discharge of the Grievant, John Salters[,] on January 2[8], 2003 for just cause? If not, what shall be the remedy?"

In addressing the issue of whether Salters was fired for just cause, the arbitrator first analyzed which of three different versions of Spero's no-smoking policy was in effect on January 28, 2003, the day of Salters's termination. The earliest rule, which neither party claims was in effect on the relevant date, provided for a four-step disciplinary process for smoking in "non-designated areas" of the plant. On January 8, 2003, an attorney representing Spero sent a letter to the IBEW containing a second version of the rule that had been discussed in a negotiation between Spero and the IBEW on January 3, 2003. This January 8 rule provided for the same four steps of discipline, but was applicable to Spero's entire plant. A third version of the no-smoking rule was promulgated by Spero on January 17, 2003, providing for the discharge of an employee upon a first offense rather than at the end of the four-step disciplinary process. The management of Spero promulgated this strict no-smoking policy in order to reduce high property-insurance premiums caused by the fire risk to the building and its contents.

After concluding that the January 17 rule was invalid, the arbitrator decided that the January 8 version controlled. The arbitrator found that Spero and the IBEW had negotiated a change in the rule during their January 3 meeting, which was memorialized in the correspondence dated January 8. In characterizing the meeting as a "negotiation," the arbitrator noted that "the meeting appeared to have all the trappings of a negotiation with large and important delegations from both sides." The two issues that were discussed at the meeting were the no-smoking rule and a floating-holiday policy.

As a result of the meeting, Spero's attorney sent two items to the IBEW on January 8: (1) the updated rules containing the four-step no-smoking rule that applied to the entire building, and (2) a separate "side letter" addressing the issue of floating holidays. The following statement appears on the first substantive page of the January 8 work rules: "The Work Rules stated in this handbook are subject to change at any time at the sole discretion of the Company." Contained in the "side letter" was an agreement as to the floating-holiday issue that was "inadvertently omitted as part of the Collective Bargaining Agreement." In order to be effective, the "side letter" had to be signed by the IBEW.

The arbitrator concluded that as a result of the January 3 negotiations, Spero could no longer unilaterally alter its no-smoking rule. In the award, the arbitrator stated that the company

> entered into a contract on January 3 to maintain the four step progression for violations of the no-smoking rule. The length of the Company's undertaking is unclear, but it must be held to have at least remained been [sic] in effect for the nine

days following the January 8 transmission of the terms of the agreement to the Union.

The arbitrator therefore held that Spero's attempt to change its no-smoking rule on January 17 was invalid and that the January 8 rule controlled. Because Salters was fired for a single smoking offense, instead of being disciplined pursuant to the four-step January 8 no-smoking rule, his termination was deemed not to be for just cause.

The arbitrator ultimately held that Salters must be reinstated with full seniority and back pay. Because the January 17 rules were determined to be invalid, the arbitrator did not address the question of whether Salters had adequate notice of the rule change before his January 28, 2003 smoking violation or, regardless of the issue of notice, whether Salters's termination under a one-strike no-smoking rule was for just cause.

Spero then filed suit against the IBEW, seeking to have the arbitration award vacated pursuant to the Labor Management Relations Act, 29 U.S.C. § 185, and the Federal Arbitration Act, 9 U.S.C. § 10. The district court granted the IBEW's motion for summary judgment and affirmed the arbitrator's award. This timely appeal followed.

## B.      Terms of the CBA relevant to this appeal

Three provisions of the CBA are relevant to this appeal. Article II, Section 2, which provides for Spero's rulemaking authority, is the first relevant provision:

> The Company retains the sole and exclusive right to manage its operations, as well as to control the disposition and number of working forces it retains. The right to manage shall also include the authority to establish and amend from time to time all policies and procedures governing and affecting the operations of the plant so that it may be operated in a safe and efficient manner.

The second relevant provision is Article I, Section 3, which governs modifications to the CBA:

> This Agreement shall be subject to amendment at any time by mutual consent of the parties hereto. Such amendment shall be reduced to writing, state the effective date of the amendment, be executed in the same manner as is this Agreement, and be approved by the INTERNATIONAL OFFICE of the Union.

Finally, the scope of authority granted to the arbitrator is limited as provided in Article I, Section 6:

> Said Arbitrator, in any decision he renders, shall conform to and be strictly bound by the provisions of this Agreement. In rendering or reaching any such decision, he shall have no power to add to, subtract from, change or modify any provisions of this Agreement.

## II. ANALYSIS

## A.      Standard of review

"When reviewing a district court's decision to confirm or vacate an arbitration award, we review factual findings for clear error and questions of law de novo. The question whether an

arbitrator has exceeded his authority is a question of law that we review de novo." *Green v. Ameritech Corp.*, 200 F.3d 967, 974 (6th Cir. 2000) (citations omitted). This court has stated that

> [t]he key issue . . . is whether the arbitrator's award draws its "essence" from the terms of the collective bargaining agreement. An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement.

*Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7*,  114 F.3d 596, 600 (6th Cir. 1997) (citations omitted).

## B.       The validity of the arbitration award

The arbitrator's finding that the January 8, 2003 agreement restricted Spero's rulemaking authority contradicts the express terms of the CBA regarding the method of modifying that document. Article II, Section 2 of the CBA grants Spero the exclusive right to make rules without consulting the IBEW and to change them at any time. This unilateral right is confirmed by the following preamble language included in each of the successive sets of rules: "The Work Rules stated in this handbook are subject to change at any time at the sole discretion of the Company." Even the arbitrator acknowledged that, "[i]n the abstract, there can be no quarrel with the Company's position" that "it has the right to establish or amend rules at any time." Despite recognizing such a right, the arbitrator held that Spero had contracted it away with respect to the no-smoking rule and thus was unable to unilaterally change the rule on January 17, 2003. The arbitration award therefore diminished Spero's rulemaking authority from that granted by the CBA.

In order for any amendment to the CBA to be effective, the requirements of the "method-of-modification" clause contained in Article I, Section 3 must be met. This issue was squarely addressed by this court in *Pleasantview Nursing Home, Inc. v. NLRB*, 351 F.3d 747 (6th Cir. 2003). In *Pleasantview*, the nursing home and the union entered into an initial CBA in 1985. *Id*. at 750. This and all subsequent CBAs contained two relevant provisions. One required that the nursing home collect union dues from the employees' pay each month. *Id*. Another stated that any amendment must be executed in writing and signed by both parties. *Id*. In May of 1996, the last in a series of written CBAs expired. *Id*. at 751. The parties orally agreed to extend the last CBA until a new agreement could be negotiated. *Id*.

For ten years after the initial CBA was executed, the company did not collect union dues from the employees' pay. *Id*. at 750-51. This was based on an "informal understanding" reached between the company and the union. *Id*. at 750. An unsigned letter from the company to the union confirmed their understanding by "stating that the collection clause would be inoperative for the period covered by the initial CBA." *Id*. at 753.

When union-management relations ultimately broke down, the union filed an unfair-labor-practice charge against the nursing home. *Id*. at 751-52. The union claimed, among other things, that the nursing home had committed an unfair labor practice by failing to collect union dues in contravention of the CBA. *Id*. at 753 & n.1. In its defense, the nursing home cited the "informal understanding" with the union, calling attention to the ten years of consistent practice, an oral agreement between the parties, and the letter from the company to the union referencing their agreement. *Id*. at 753.

This court, holding that the method-of-modification clause contained in the CBA was enforceable, invalidated the nursing home's defense:

> [W]e need not decide whether oral modification in general is impermissible because all CBAs here contained an express zipper clause prohibiting modification except by written agreement executed by both parties. Such zipper clauses are legally effective. *See Martinsville Nylon Employees Council Corp. v. NLRB*, 969 F.2d 1263, 1267-68 (D.C. Cir. 1992) . . . . Because neither an oral agreement, nor an unsigned letter that by its own terms only covers the initial CBA, constitutes a valid modification of the final CBA at issue here, its unambiguous language controls.

*Id*. at 754 (citations and footnote omitted). The *Pleasantview* court thus held that the NLRB did not err in finding that the company's failure to collect union dues from its employees was an unfair labor practice. *Id*. at 755.

Turning now to the case at hand, the arbitrator's finding that a superseding agreement was made on January 3 and confirmed in the January 8 correspondence from Spero's attorney effectively modified the CBA with respect to the company's rulemaking authority. But Article I, Section 3 requires that any modification to the CBA (1) be reduced to writing, (2) state its effective date, (3) be executed in the same manner as the CBA, and (4) be approved by the international office of the IBEW. Even though the arbitrator found that the January 3 meeting had "all of the trappings of a negotiation," the purported "contractual undertaking" that resulted did not comport with the method-of-modification clause. The January 8 letter was not executed in the same manner as the CBA because it was neither signed by a representative of the IBEW nor approved by the IBEW's international office.

This case is analogous to *Pleasantview*. In both cases, a subsequent agreement purportedly changed the employers' rights and obligations as spelled out in a CBA. The alleged agreement in both cases also failed to comply with the method-of-modification clause contained in the CBA. In *Pleasantview*, the writing was not signed by either party. Here, there was no writing executed in the same manner as the CBA, *i.e.*, bearing the signature of an IBEW official and approved by the international office of the IBEW.

This court held in *Pleasantview* that an agreement to modify the rights and obligations under a CBA must comply with the terms of the method-of-modification clause in order to be given effect. *Pleasantview*, 351 F.3d at 754. The purported agreement found by the arbitrator in this case did not meet the requirements of the CBA's method-of-modification clause.

Our conclusion is further supported by the actions of the parties, which illustrate that they did not intend the January 8 letter to amend the CBA. In his decision, the arbitrator held that the January 8 letter represented an agreement to effectively modify the CBA with respect to Spero's rulemaking authority. But the January 8 letter was a follow-up to the January 3 meeting, at which *both* the no-smoking rule and the floating-holiday policy were discussed. If the parties had intended to modify their rights under the CBA with respect to both issues, one would expect the issues to have been treated in the same manner by the January 8 letter. In fact, the January 8 letter treated the two issues quite differently.

The January 8 letter, on the one hand, simply enclosed an updated set of the work rules that contained the revised no-smoking policy. With respect to the floating-holiday policy, however, the correspondence included a "side letter" that required the IBEW to sign and return the document before it became effective. By its own terms, the side letter "represent[ed] certain understandings between the Company and the Union which w[ere] inadvertently omitted as part of the Collective

Bargaining Agreement."  The correspondence thus treated the implementation of the floating-holiday policy like a true amendment of the CBA, but treated the no-smoking policy change as a routine unilateral alteration of the work rules.

Finally, the terms of the CBA provided that the arbitrator could not "add to, subtract from, change or modify" any part of the agreement.  Contrary to this express limitation on the arbitrator's authority, the arbitration award restricted Spero's unilateral rulemaking power under the CBA.  The arbitration award therefore did not "draw its essence from the agreement" and must be set aside. *See Beacon Journal*, 114 F.3d at 600.  This is not to say, however, that there is nothing further for an arbitrator to decide in this case.  The issues of whether Salters had adequate notice of the rule change before his January 28, 2003 smoking violation and whether Salters's termination under the one-strike no-smoking rule was for just cause, for example, were never reached because the arbitrator improperly decided that the January 17, 2003 change in the work rules was ineffective.

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

———————————————

**CONCURRENCE**

———————————————

RYAN, Circuit Judge, concurring separately. Like my colleagues, I believe the arbitration award for Salters must be set aside because it did not "draw its essence" from the collective bargaining agreement (CBA), but I come to that conclusion for a different reason than my colleagues offer. *Beacon Journal Pub. Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 600 (6th Cir. 1997).

In my view, this case is not about an arbitrator incorrectly deciding that the CBA was amended by the parties' separate and subsequent agreement; it is about his deciding the dispute in violation of the CBA, because his decision did not draw its essence from the CBA. It drew its essence from what the arbitrator called the January 3, 2003, oral "contract[]," which was mentioned in the January 8, 2003, letter. Consequently, I do not understand this case as having anything to do with how the parties could properly have modified the CBA and whether they did so. Rather, it is a case about an arbitrator's decision "drawing its essence" from something besides the CBA, and therefore, under settled law, it must be set aside.

Finally, I would not reverse and remand to the district court. I have real doubt that this court has any authority to tell the district court, to tell the parties, to tell their hired arbitrator to go back to work, and then specifically what to do. Whether the parties wish to hire more arbitration is entirely in their discretion, not the federal court's. I would simply vacate the district court's judgment confirming the arbitrator award and leave the next step to the parties.